IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | No. 11-00101-CR-W-BCW |
| | ) | |
| ANDREW M. JONES, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

COMES NOW, the United States of America by its Acting United States Attorney, David M. Ketchmark, and by its Assistant United States Attorney, Katharine Fincham, and respectfully submits the following Sentencing Memorandum for the Court's consideration prior to the sentencing of Defendant Andrew M. Jones.

**I.     Background**

Defendant Andrew M. Jones (Jones) has pled guilty, pursuant to a written plea agreement, to one count of receipt of child pornography. Jones' case is relatively straightforward. As Jones admitted in the "Factual Basis" of the plea agreement and in his subsequent presentence investigation report, he had been looking at child pornography since his mid-teens. (PA[1] ¶ 3, p. 2; PSR[2] ¶ 12, p. 5) This means that by the time of the charged offenses, Jones would have been accessing child pornography for at least a decade. Jones admitted to using a file-sharing program

---

[1] Hereinafter, "PA" refers to pages and paragraphs of the written Plea Agreement signed by Jones on February 27, 2012.

[2] Hereinafter, "PSR" refers to paragraphs of the Final Presentence Investigation Report to which Jones has *not* objected.

1

(with the sharing function disabled) and to browsing websites to find child pornography. (PA ¶ 3, p. 2; PSR ¶ 12, p. 5) Jones has conceded that the forensic examination of his computer media uncovered over 800 still images and 30 videos of the sexual abuse of children. (PSR ¶ 14, p. 5) He has admitted that some of these images included toddlers being penetrated with foreign objects, or adult males attempting to sexually penetrate them. Other images are of prepubescent girls in bondage or other painful scenarios. (PA ¶ 3, p. 3; PSR ¶ 14, pp. 5-6) Jones admitted that the video that is the subject of his offense of conviction, "Girl Spanked.avi.," depicts a nude prepubescent being caned, with multiple lascivious shots of her genitals. (PA ¶ 3, p. 3; PSR ¶ 14, pp. 5-6)

As part of the plea agreement, Jones stipulated that multiple enhancements under the United States Sentencing Guidelines ("Guidelines") are applicable to his case. These include enhancements for: images of persons under the age of 12 years; images of a sadistic or otherwise violent nature; possession of more than 600 images; and the use of a computer to commit the offenses. (PA ¶ 10, pp. 7-8) Jones has not objected to the application of these enhancements by the Probation Officer in the PSR. (PSR pp. 6-7) Nor has Jones objected to the final Guideline calculation as presented in the PSR, which sets his advisory Guideline range at 97 to 121 months' incarceration, after credit to Jones for acceptance of responsibility. (PSR ¶ 53, p. 10)

Within the last two days Jones has filed a Sentencing Memorandum (Doc. 34) with 34 pages of attachments. The principle attachment was a 29-page, single-spaced article, with more than 280 footnotes, authored by defense counsel's associate in the public defender's office, Mr. Troy Stabenow.

The Government does not have the time to read Stabenow's article thoroughly and provide a considered response to the Court before the sentencing hearing next week. However, in other

cases the Government has briefed extensively the flaws in Stabenow's earlier versions of criticisms of the child pornography guidelines[3]. The Government will offer the Court here, in the brief time left to it before the instant sentencing hearing, criticisms by other courts of Stabenow's approach. These and other decisions argue for continued respect for the Guidelines and serious consideration of them with other sentencing factors necessarily contemplated by the Court.

## II.     Sentencing Considerations

The United States Sentencing Commission ("USSC") responded to criticism of its work in this area by publishing, "The History of the Child Pornography Guidelines," issued by the United States Sentencing Commission, October, 2009. See: http://www.ussc.gov/general/20091030 History Child Pornography Guidelines.pdf

The USSC points out on page seven of this history:

> "[I]n amending the child pornography guidelines over the years, the Commission has reviewed sentencing data, considered public comment on proposed amendments, conducted public hearings on proposed amendments, studied relevant literature, and considered pertinent legislative history."

The USSC's further responses to some specific criticisms are included below.

---

[3] Stabenow's earlier article, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines*, formerly available at http://mow.fd.org/3%20July%202008%20Edit.pdf, is referenced in some of the case law to date, and was generated pursuant to "a special project undertaken by [the] National Federal Defender Sentencing Resource Counsel," entitled *Deconstructing the Guidelines.* The project has already issued other papers on deconstructing the career offender guideline and the relevant conduct guideline, and promises to issue more on other guidelines. *Id.*

3

### A. Defense Arguments.

#### 1. *The Enhancement For The Number of Images*

The table of enhancements for the number of images was enacted by Congress, pursuant to its constitutional authority to set sentences for federal criminal cases. The Congress delegates to the United States Sentencing Commission ("USSC) the ability to further implement sentences issued under the authority provided to Congress.[4] Jones had over 800 still images and 30 videos depicting the sexual abuse of children.

The USSC on its own provided the guidance for counting videos:

> [T]he Commission had to define the term 'images,' quantify video images, and implement the directive. Given that the image table enacted by Congress assigned a 2-level increase for between ten images and 150 images, and a 3-level increase for 150-300 images, the Commission adopted a definition of video that considered each video to contain 75 images, squarely in the middle of the 2-level increase range.

*United States v. Cunningham,* 680 F. Supp. 2d 844, 850 (N.D. Ohio 2010)(internal citations omitted).

The Eighth Circuit upheld the enhancement for the number of images in a case in which the defendant, like Jones, was assessed a 5-point enhancement for 600 or more images. *United States v. Acosta,* 619 F.3d 956 (8th Cir. 2010). In finding that the defendant offered no support for its argument that such an enhancement was arbitrary or unjust, the Court observed:

---

[4] For a discussion of the propriety of Congress' issuance of directives and sentencing guidelines to the USSC, see *United States v. Bistline*, 665 F.3d 758, 761-63 (6th Cir. 2011). "[2G2.2 directives] became law not because they were approved by a novice congressman, but because they were part of legislation approved by both Houses of Congress and then signed by the President. What came before then is no business of the courts." *Id.* at 763.

4

> Moreover, as the government notes, enhancing a defendant's sentence for the number of illegal items with which he was involved is a common practice throughout the Guidelines and is not unreasonable. FN5 *See, e.g.*, U.S.S.G. Section 2K2.1 (b) (increasing offense levels based on number of firearms involved in the offense; U.S.S.G. Section 2B1.1(b)(2) (increasing offense levels for theft related offenses based on amount of loss involved in the offense); U.S.S.G. Section 2L1.1(b)(2) (increasing offense levels for unlawful alien smuggling related offenses based on the number of unlawful aliens involved in the offense).

*Id.* at 962.

Enhancing an offense based on the size of the stash of illegal contraband the person chooses to accumulate is logical and respected in other offenses. Why is it not with images of sexual abuse of children? The Government believes that the images can be as dangerous in any given case as drugs or firearms, and the defense argument that 'everybody does it at this level' not only doesn't make sense, but it trivializes the offense. The Guidelines at least recognize that such trivialization is inappropriate.

As the Court in *United States v. Miller*, 665 F.3d 114, 123 (5th Cir. 2011) pointed out:

> We reject the view that . . . because there are many defendants who obtain hundreds of pornographic images of children, the terms of imprisonment should be reduced for all who receive or transport child pornography, regardless of the number of the images. The Guidelines treat differing behavior differently, and in our view, that differentiation is not unreasonable.

    2. *The Computer Enhancement.*

        a.) The reason for the enhancement.

In *United States v. Richardson*, 238 F.3d 837, 842 (7th Cir. 2001), the defendant pled to receiving and possessing child pornography. In upholding the computer enhancement for the defendant, the Court observed:

> Use of the Internet enhances the dangers that child pornography poses, because it is a more discreet and efficient method of distribution; but if this makes the sender more dangerous, it likewise makes the receiver more dangerous. A market has two sides, supply and demand; without both, the market collapses. The senders of

5

> child pornography supply it; the demanders receive it. The [computer enhancement] guideline is acknowledged to treat both sides of the market symmetrically when any method of transmission other than the Internet is used; it would make no sense to treat them differently when the more ominous method is used.

After studying various aspects of child pornography cases, including the impact of computers on such cases, Congress enacted the Sex Crimes Against Children Prevention Act of 1995 (SCACPA), Pub. L. 104-71. The House Judiciary Committee Report on SCACPA found:

> Distributing child pornography through computers is particularly harmful because it can reach an almost limitless audience. Because of its wide dissemination and instantaneous transmission, computer-assisted trafficking is also more difficult for law enforcement officials to investigate and prosecute. H.R. Rep. 104-90.

Again, the defense argument is that since everyone now uses a computer to obtain child pornography, therefore an enhancement for its use is meaningless. As the Court in *Cunningham* exhorted, this kind of argument is nonsensical:

> Finally, the entirety of this argument is somewhat confusing to the Court. The fact that certain enhancements apply on a frequent basis does not serve as a basis for negating the guidelines. . . . Moreover, the Court has never before seen an argument that because a crime is easy to commit, it should be punished less severely. Robbery is certainly simplified from the criminal's perspective by the use of a firearm and the choice of a feeble, elderly victim. The Guidelines, however, do not lessen punishment because the crime was easier to commit. In fact, seeking out a vulnerable victim leads to a 2-level enhancement under the Guidelines. U.S.S.G. Section 3A1.1(b)(1).

*Cunningham* at 851-52.

       3.    *Disparity of Sentences.*

The statistical charts provided by the defense were not generated by the USSC, but by an analyst for a sentencing project sponsored by the Federal Public and Community Defenders. The Government has not had time to review the USSC data used by the analyst or check the accuracy of his analysis.

6

However, the *Miller* Court addressed apparently similar statistics and rejected them as a basis for finding a Guideline sentence unreasonable:

> Appellate courts are not tasked with applying statistical analyses to assess the reasonableness of a particular sentence in a particular case, nor are district courts. While sentences imposed by other courts may be a consideration for a district court, such information does not set a median, floor, or ceiling.

*Miller* at 122.

### B. Further Judicial Analysis of Stabenow's Approach [Prior Article]

The Government is providing samples of criticism of Stabenow's prior work as reasons to challenge the credibility of—or at least withhold judgment on—the most recent article provided by the defense until a considered response can be generated.

In *United States v. Fiorella*, 602 F. Supp. 2d 1057, 1074-1075 (N.D. Iowa, 2009), the Court addressed Stabenow's 2008 analysis and the decisions that have adopted it:

> [T]he court respectfully believes Defendant's cited district court cases were wrongly decided. In the undersigned view, the sentences imposed . . . understate the seriousness of the offenses under consideration and fail to promote respect for the law and provide just punishment. ***Such sentences increase sentencing disparity*** and afford inadequate deterrence to criminal conduct-not only to the defendant who is at risk of re-offending but also to other prospective child pornographers who might consider victimizing children. It must be emphasized that the thriving business of child pornography, even in the case of "mere" possession, is not victimless. . . . FN8. It is easier to overlook the horrors of child pornography when, as is often the case, the material at issue is not presented to the sentencing judge. . . ." (internal citations omitted)(emphasis added).

In *United States v. Cunningham,* 680 F. Supp. 2d 844 (N.D. Ohio 2010, the district court acknowledged the Stabenow article and looked more closely at the legislative and Sentencing Commission histories behind the changes in 2G2.2. The Court concluded:

> Rather than cede its responsibility, the [Sentencing] Commission instead appears to have gone above and beyond to justify its amendments. Far from failing to rely on empirical data and its own expertise, the Commission has conducted formal studies whenever possible and has conducted extensive analysis to fulfill its statutory

7

> obligations. Have politicians unduly hampered the Commission's ability to
> perform its duties? There can be no question that they have interfered. However,
> at the same time, Congress' actions could be viewed as a necessary response to a
> crime that was spiraling out of control. As internet access grew across this
> country, so did the online community of pedophiles that supports the market for
> child pornography. Rather than remain silent, Congress acted. In turn, the
> Commission used empirical data and its own expertise to craft the appropriate
> guideline amendments. This Court, therefore, declines to join those district judges
> that have found otherwise.

*Id.* at 851.

The *Cunningham* court also pinpointed significant flaws in Stabenow's analysis regarding enhancements commonly assessed in child pornography cases:

> Initially, the Court notes that the frequency of the enhancements was expressly
> acknowledged by the Commission when it set the base offense levels for these
> offenses. The commission was clear that it took into account the frequent use of
> these enhancements when it set the base offense levels. . . . [for example]   [O]nce
> the two most common enhancements are applied [that is, the use of a computer and
> images of prepubescent children] offenders effectively start off at the mandatory
> minimum [before acceptance of responsibility]. In other words, the Court could
> find that seven levels of enhancement are appropriate, yet still be in position to
> sentence an offender to the mandatory minimum with only a 3-month variance.
>
> . . .
>
> Stabenow concludes, "The flaw with the U.S.S.G. Section 2G2.2 today is that the
> average defendant charts at the statutory maximum, regardless of Acceptance of
> Responsibility and Criminal History." Stabenow at 23. This assertion is flawed
> in several respects. First, it is undermined by the very data upon which Stabenow
> purports to rely. The mean sentence for child pornography offenses is roughly 120
> months, well below the statutory maximum of twenty years. . . . Stabenow's
> argument that the average offender charts out at the maximum is therefore fatally
> flawed.
>
> More troubling to the Court is that Stabenow's argument contains the same form of
> sterilization that is prevalent throughout the legal system when dealing with child
> pornography. . . . A closer examination of "average" when used by Stabenow is
> disturbing. In order to chart out at the statutory maximum, . . . the offender must
> have images of a prepubescent minor (+2) levels, distribute the images for value

8

> (+5 levels), possess images that are sadistic or masochistic (+4 levels), use a computer (+2 levels), and either engaged in a pattern of abuse (+5 levels) or possess more than 600 images (+5 levels). . . . In order to chart *above* the statutory maximum . . . the offender would need to both possess over 600 images and have engaged in a pattern of abuse. Thus, the term "average offender" is significantly misleading.
>
> . . .

*Id.* at 851-52. (emphasis in the original)

The *Cunningham* court went on to agree with the court in *Fiorella, supra,* that the sentencing judge should review the images of child pornography in question rather than rely on descriptions of the image contents: "Those descriptions, however, are little more than words on paper. Absent examining the image, one cannot get a true sense of the depravity they depict." *Id.* at 854.

Multiple Eighth Circuit and district court cases have also held that the district court is not required to disregard the child pornography guidelines. *United States v. Buesing*, 615 F.3d 971, 975 (8th Cir. 2010). *See also, United States v. Ultsch,* 578 F.3d 827, 830-31 (8th Cir. 2009); *United States v. Barron*, 557 F.3d 866, 871 (8th Cir. 2009).

### III. CONCLUSION: Section 3553(a) Factors and Government's Recommendation

"[G]eneral deterrence is crucial in the child pornography context [.]" *Bistline at 767, citing United States v. Camiscione*, 591 F3d 823, 834 (6th Cir. 2010).

The Court in *Miller, supra,* applauded the district court's recognition of:

> [t]he undeniable fact that real children are actually being abused and violated when pornographic images are made. Without a market for such images, and without a strong appetite for more and more images exhibited by Miller and similarly situated defendants, there would be far fewer children who are injured and criminally assaulted in this way. If a handful of pornographic images taken twenty years ago

9

were sufficient to satisfy the perverse desires of those who possess and traffic in child pornography, we would not have the huge industry that exists internationally today. No other child would be raped or sodomized or otherwise violated to produce pornographic images. Tragically, the reality is that there is a huge demand for 'fresh' faces and images. *Miller* at 123.

The Government will provide the Court at sentencing with a sample of images taken from Jones' computer. These will inform the Court's sentencing decision and support the reservations the Government has as to this particular defendant.

As Jones has admitted, his downloading of child pornography has continued for at least a decade. His most recent activity evidences a taste for sadistic treatment of children. The amount of images of child sexual exploitation is not *de minimis.*

On the other hand, there may be mitigating factors relevant to the consideration of this defendant's sentence.

The Government believes that the nature and circumstances of this offense, the need for the sentence to reflect the seriousness of the offense, the need to provide just punishment for the offense and to afford adequate deterrence to criminal conduct may dictate a sentence near the lower end of the Guideline range in this case. (18 U.S.C. §§ 3553(a)(1) and (2)(A) and (2)(B))

Notwithstanding the inroads made by some critics of the child pornography Guidelines, the Government agrees with the district court in *United States v. Wellman,* 2010 WL 2218770, *4 (S.D.W.Va.), when it observed:

> [E]ven though a guideline is affected by congressional adjustment, a sentencing court may rely on it. *United States v. Stone*, 575 F.3d 83 at 93 (1st Cir. 2009). Indeed, it should. Lest we forget, criminal sentences serve many purposes, not the least of which is punishment. The sentence for a particular criminal act is not determined by feeding objective data about the costs of the criminal behavior on society, recidivism, rates, and so forth into a formula that produces a sentencing range with scientific rigor. Though data is important, guideline sentences embody normative judgments about how unacceptable an action is. Actions that deviate further from society's norms – that are viewed as more reprehensible – warrant

10

greater punishment. Possessing and distributing child pornography are not activities that society is prepared to tolerate. By increasing the penalties pertaining to child pornography offenses, Congress has expressed its belief that distributing and possessing child pornography are repugnant and unacceptable acts warranting severe punishments.

Respectfully submitted,

David M. Ketchmark
Acting United States Attorney

By  */s/ Katharine Fincham*

Katharine Fincham #32570
Assistant United States Attorney

Charles Evans Whittaker Courthouse
400 East Ninth Street, Fifth Floor
Kansas City, Missouri   64106
Telephone:   (816) 426-3122

## **CERTIFICATE OF SERVICE**

       The undersigned hereby certifies that a copy of the foregoing was delivered on August 3, 2012, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record and hand delivered to the probation office.

Dana Chance
U.S. Probation Officer
400 E. 9th Street, Room 4510
Kansas City, Missouri 64106

                                                              */s/ Katharine Fincham*
                                                              Katharine Fincham
                                                              Assistant United States Attorney